IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CREIGHTON UNIVERSITY, | ) | 4:08CV460 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| GENERAL ELECTRIC COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

In this diversity action, the plaintiff, Creighton University, seeks to recover over $7 million in damages that it allegedly sustained by implementing a healthcare technology system that was supplied by IDX Information Systems Corporation, the predecessor-in-interest of the defendant, General Electric Company.[1]  GE has filed a motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). (Filing 21.)  GE's motion will be denied.

## *I.  BACKGROUND*

Creighton claims (1) that IDX and GE breached a services warranty in the parties' written agreement "by failing to provide services in a professional and workmanlike manner and in accordance with industry standards," and (2) that IDX negligently represented that it "had expertise in building and implementing practice management systems including the electronic claims processing portion," that "the System would be adaptable to Creighton Medical Associates' practice," and that "under a 'most likely case' scenario, Creighton would realize cumulative cash flow of approximately $4.7 million if the System were implemented." (Complaint (filing 1), ¶¶ 14, 18.)  In addition to the unrealized cash flow, Creighton alleges that it "was

---

[1] The parties agree that Nebraska law applies.

unable to collect approximately $2.4 million in net billings (i.e. after contractual adjustments) generated after the System went 'live'," and that it "paid approximately $600,000 in out of pocket expenses in connection with efforts to remedy problems with the System and efforts to recover amounts owed on the significant backlog of claims." (*Id.*, ¶ 11.)

In support of its motion to dismiss, GE argues (1) that the agreement contains a damages disclaimer clause that precludes recovery of any consequential, special, incidental, punitive, or indirect damages, (2) that repair or replacement is the exclusive remedy for any deficiencies in the system, (3) that Creighton failed to give notice of any alleged problems with IDX personnel, which is an implicit requirement of the services warranty, (4) that Creighton failed to give notice of breach as required by the agreement and by Uniform Commercial Code § 2-607, and (5) that the negligent misrepresentation claim is barred by the statute of limitations. Creighton's responses to these arguments are (1) that the damages disclaimer is unenforceable, and, in any event, Creighton is only seeking to recover expectancy or direct damages for the unrealized cash flow, uncollected billings, and out-of-pocket expenses, (2) that Creighton is not relying upon the performance warranty that contains the repair or replacement language, (3) that the services warranty is distinct from the contractual provision regarding replacement of IDX personnel, (4) that Creighton gave adequate notice of breach, even assuming that U.C.C. § 2-607 applies to the services warranty, and (5) that Creighton did not discover the falsity of IDX's representations until after the system went "live" in September 2005, within the 4-year limitations period.

## II. DISCUSSION

When confronted with a Rule 12(b)(6) motion, all the factual allegations contained in the complaint are accepted as true, and the complaint is reviewed to determine whether its allegations show that the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). If the complaint does not state "enough facts to state a claim to relief that is plausible on its face," it must

2

be dismissed for failure to state a claim. *Id.* at 1974. The complaint must state enough facts to "nudge [the] claims across the line from conceivable to plausible. . .." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 1965 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

"When ruling on a motion to dismiss under Rules 12(b)(6) or 12(c), a district court generally may not consider materials outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999). It may, however, consider some public records, materials that do not contradict the complaint, or materials that are "necessarily embraced by the pleadings." *Id.* (internal quotation omitted); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007)." *Noble Systems Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008).

GE has filed a redacted copy of a November 12, 2008 letter from Creighton renewing the parties' agreement. (Filing 23.) The purpose of this filing, evidently, is to show that "the System currently is functioning as warranted." (GE's Brief in Support of Motion to Dismiss (filing 22), p. 10.) Creighton has filed a motion to strike this evidence from the record. (Filing 26.) Inasmuch as the renewal notice effectively amended the parties' agreement by extending its term (as provided in paragraph 3 of the agreement),[2] Creighton's motion to strike will be denied. *See, e.g., Enervations, Inc. v. Minnesota Mining and Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (termination letter clearly was "necessarily embraced by the pleadings" in action for wrongful termination of contract). The fact that the contract has been extended, however, does not bar Creighton's action.

---

[2] A partial copy of the agreement is attached to the complaint as Exhibit A (filing 1-2).

3

### A. Damages Disclaimer

Paragraph 27 of the agreement is a broadly worded damages disclaimer that reads as follows:

> IDX SHALL NOT BE LIABLE TO CUSTOMER FOR ANY CAUSE OR CAUSES UNDER OR RELATED TO THIS AGREEMENT, (EVEN IF THIS AGREEMENT IS TERMINATED) FOR ANY CONSEQUENTIAL, SPECIAL, INCIDENTAL, PUNITIVE OR INDIRECT DAMAGES (INCLUDING WITHOUT LIMITATION LOSS OF PROFIT, REVENUE, BUSINESS OPPORTUNITY OR BUSINESS ADVANTAGE), WHETHER BASED UPON A CLAIM OR ACTION OF TORT, CONTRACT, WARRANTY, NEGLIGENCE, STRICT LIABILITY, BREACH OF STATUTORY DUTY, CONTRIBUTION, INDEMNITY OR ANY OTHER LEGAL THEORY OR CAUSE OF ACTION, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(Exhibit A to Complaint (filing 1-2), p. 18.)

### 1. Enforceability

Creighton suggests in a footnote to its brief that this contract clause might be unenforceable for three reasons. (Creighton's Brief in Opposition to Motion to Dismiss (filing 28), p. 14, n. 7.) First, the consequential damages disclaimer could be unconscionable. *See* Neb.Rev.Stat. U.C.C. § 2-719(3) (West, WESTLAW 2008) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."). Second, to the extent that a limitations of remedies clause also applies to the alleged breach of warranty, and if the limited remedy of "provid[ing] at no charge to Customer the services required to make the System operate as warranted" (filing 1-2, p. 10, ¶ 17.1) failed of its essential purpose, then the damages disclaimer could also be disregarded. *See John Deere Co. v. Hand*, 319 N.W.2d 434, 437-38 (Neb. 1982) (when buyer's limited remedy of repair or replacement of defective parts fails of its essential purpose because of seller's

inability to cure nonconformities within reasonable time, buyer may be entitled to pursue any other remedies under the Uniform Commercial Code, including consequential damages, even though specifically excluded by written warranty). Third, the provision could be against public policy if IDX was grossly negligent when it made the alleged misrepresentations. *See New Light Co., Inc. v. Wells Fargo Alarm Services*, 525 N.W.2d 25, 30 (Neb. 1994) (public policy prevented defendant from limiting its damages for gross negligence or willful and wanton misconduct).

As GE properly points out, Creighton has failed to plead unconscionability. This issue therefore cannot be considered for purposes of ruling on the motion to dismiss.[3] *See Guaranteed Foods v. Rison*, 299 N.W.2d 507, 512 (Neb. 1980) ("[T]he issue of unconscionability must be pleaded in order to be considered by the court."). *But see Langemeier v. National Oats Co., Inc.*, 775 F.2d 975, 977 (8th Cir. 1985) (U.C.C. § 2-302 permits a court to raise the issue of unconscionability sua sponte). Creighton has specifically alleged, however, (1) that "IDX and GE failed to remedy the problems [with the System] within a reasonable time after being notified by Creighton" and (2) that "IDX was grossly negligent in making the representations." (Filing 1, pp. 4, 6, ¶¶ 10, 19.)[4] The first allegation, which sufficiently states that the limited remedy provided in paragraph 17.1 of the agreement failed of its essential purpose, will be discussed in the next section of this memorandum. Whether the allegation of gross negligence is sufficient to raise a legitimate issue regarding the enforceability of the damages disclaimer in paragraph 27 will be considered first.

---

[3] Once the issue has been sufficiently pleaded, the plaintiff must be given a reasonable opportunity to be heard. *See Adams v. American Cyanamid Co.*, 498 N.W.2d 577, 589 (Neb.App. 1992) ("[T]he requirement that an unconscionability hearing be held under § 2-302 also applies to determinations of whether limitations of remedies are unconscionable under §2-719(3).").

[4] The parties' agreement also limits total damages to $5 million, except as to "claims arising from IDX's gross negligence or intentional misconduct." (Filing 1-2, p. 17, ¶¶ 30, 31.)

5

The Nebraska Supreme Court has adopted the definition of the negligent misrepresentation cause of action found in Restatement (Second) of Torts § 552 (1977) ("One who . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."). *See Gibb v. Citicorp Mortgage, Inc.*, 518 N.W.2d 910, 922 (Neb. 1994); *Washington Mut. Bank, FA v. Advanced Clearing, Inc.*, 679 N.W.2d 207, 210 (Neb. 2004) ("Liability for negligent misrepresentation is based upon the failure of the actor to exercise reasonable care or competence in supplying correct information."). The Nebraska Supreme Court has not indicated whether it would recognize a cause of action for "grossly negligent misrepresentation", but, even assuming that it would,[5] the Court's decision in *New Light* does not require a determination that the damages limitation clause in the present case is void as against public policy.

The Nebraska Supreme Court made it clear in *New Light* that the public policy determination must be made on a case-by-case basis, and that there is no blanket prohibition against a contracting party limiting its damages for gross negligence or willful and wanton misconduct. The Court stated:

> Whether a particular exculpatory clause in a contractual agreement violates public policy depends upon the facts and circumstances of the agreement and the parties involved. The right of contract may be restricted for the public good. The greater the threat to the general safety of the community, the greater the restriction on the party's freedom to contractually limit the party's liability. For example, a contractual agreement to dig a ditch does not have the same public policy considerations as would the installation of a fire alarm system in a school, hospital, nursing home, restaurant, or other heavily occupied

---

[5] Because GE does not argue that Creighton's claim for grossly negligent misrepresentation cannot be maintained under Nebraska law, the court does not decide this issue.

6

> building. Common sense tells us that the greater the risk to human life and property, the stronger the argument in favor of voiding attempts by a party to insulate itself from damages caused by that party's gross negligence or willful and wanton misconduct.

*New Light*, 525 N.W.2d at 30. Because the contract in *New Light* involved the installation of a fire alarm system, the Court found that public safety considerations were paramount. It stated:

> In the factual setting in this case, when we balance the parties' right to contract against the protection of the public, we find a sufficiently compelling reason to prevent Wells Fargo from insulating itself by contractual agreement from damages caused by its own gross negligence or willful and wanton misconduct. Such an agreement would have a tendency to be injurious to the public. This limitation on the freedom to contract is imposed by law because of the potential risks to human life and property and is, therefore, independent of the agreement of the parties.

*Id.*

From the allegations of Creighton's complaint, it does not appear that the failure of the healthcare technology system endangered the safety of the community in any way; it is only alleged that Creighton's finances were adversely affected. Because there are no facts alleged to support a finding that paragraph 27 violates public policy, this damages disclaimer will apply to the misrepresentation claim.

## 2. *Nature of Damages Sought*

The largest item of damages sought by Creighton is the projected cash flow increase of $4.7 million. GE argues that such damages represent lost profit or loss of business opportunity, and are clearly excluded by paragraph 27 of the agreement. Creighton argues that it is only seeking to recover general damages. In support of its argument, Creighton cites an unpublished opinion by the Nebraska Court of Appeals,

7

*Infousa.com, Inc. v. Berj, Inc.*, No. A-04-303, 2005 WL 2648955 (Neb.App. Oct. 18, 2005), in which the licensor of a consumer database was allowed to recover minimum annual royalty payments for the full 5-year term of its contract despite a provision that there could be no liability "for consequential or incidental damages or for any lost profits." Even if this unpublished decision were precedential,[6] it is distinguishable from the present case.

The defendant in *Berj* promised to pay a certain sum to the plaintiff during each year of the licensing agreement. The Nebraska Court of Appeals held that the plaintiff was not precluded from recovering these expected payments following the defendant's breach because it was only seeking "'market measured' general damages as described in Restatement (Second) of Contracts § 347(a) (1981), and not recovery of 'profit' or other special, consequential, or incidental damages as described in § 347(b)."[7] *Id.*, at *14. The present case does not involve a direct payment obligation

---

[6] "Opinions of the Court of Appeals which the deciding panel has designated as 'For Permanent Publication' may be cited in all courts and tribunals in the State of Nebraska. Other opinions and memorandum opinions of the Court of Appeals may be cited only when such case is related, by identity between the parties or the causes of action, to the case then before the court." Neb. Ct. R. App. P. § 2-102(E)(4).

[7] Restatement § 347 provides that, subject to certain limitations (regarding avoidable loss, unforeseeable injury, uncertain damages, and emotional disturbance),

> the injured party has a right to damages based on his expectation interest as measured by
>     (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
>     (b) any other loss, including incidental or consequential loss, caused by the breach, less
>     (c) any cost or other loss that he has avoided by not having to perform.

Restatement (Second) of Contracts § 347(a) (1981). Under Nebraska law, expectancy damages cannot be recovered for a negligent misrepresentation. As stated by the

such as this. Instead, IDX allegedly represented that Creighton's operating revenues (*i.e.*, payments received from others) would increase by using the new billing system.[8]

Loss of this anticipated revenue fits the definition of consequential damages. *See El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 261 N.W.2d 358, 363 (Neb. 1978) ("Lost profits, proximately caused by a seller's breach of warranty, are consequential damages which may be recovered under section 2-715, U.C.C., if proof of such loss is sufficient."); *American Cyanamid*, 498 N.W.2d at 588 ("Consequential damages, as opposed to direct damages, do not arise directly according to the usual course of things from the breach itself; rather, they occur as a consequence of special

---

Nebraska Court of Appeals in *Burke v. Harman*, 574 N.W.2d 156, 176 (Neb.App. 1998):

> The commentary to § 552B of the Restatement adopts the out-of-pocket rule as the appropriate measure of damages for negligent misrepresentation and specifically excludes benefit of bargain damages. *Trytko v. Hubbell, Inc.*, 28 F.3d 715 (7th Cir.1994). . . . The *Trytko* court cites W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 10 (5th ed. 1984), to explain the crucial difference between these different measurements of damages as follows: "The out-of-pocket rule 'looks to the loss which the plaintiff has suffered in the transaction, and gives him the difference between the value of what he has parted with and the value of what he has received.'" 28 F.3d at 722. . . . In contrast, the benefit of the bargain rule "gives the plaintiff the benefit of what he was promised, and allows recovery of the difference between the actual value of what he has received and the value that it would have had if it had been as represented." Keeton et al., *supra*, § 10 at 768.

[8] GE argues that IDX only made a forecast which cannot supply the basis for a misrepresentation claim. *See, e.g., Tracy Broadcasting Corp. v. Spectrum Scan, LLC*, No. 8:06CV336, 2009 WL 187653, *8 (D.Neb. Jan. 23, 2009) (statement that engineering and regulatory work for radio station could increase its selling price to between $4 and $6 million was merely opinion regarding future values which were not susceptible to definite knowledge). The court is unable to determine this issue from the face of the complaint.

9

circumstances known or reasonably supposed to have been contemplated by the parties when the contract was made.").

The second item of damages that Creighton seeks to recover is $2.4 million in net billings that it allegedly was unable to collect after the system went live because of programming deficiencies and delayed implementation of some parts of the system. This alleged loss of income also must be categorized as an item of consequential damages. *See, e.g., Shotkoski v. Standard Chemical Mfg. Co.*, 237 N.W.2d 92, 97 (Neb. 1975) (consequential damages included loss in milk production caused by dairy farmer's use of cattle feed supplement); *American Cyanamid*, 498 N.W.2d at 588 (farmers' claim against herbicide manufacturer for crop loss concerned consequential damages rather than direct damages).

The final item of damages sought is $600,000 in out-of-pocket expenses that Creighton allegedly paid to remedy problems with the system and to collect claims that were not billed in a timely manner. The collection costs are incidental damages. *See* Neb.Rev.Stat. U.C.C. § 2-715(1) (West, WESTLAW 2008) ("Incidental damages resulting from the seller's breach include . . . reasonable expense[s] incident to the delay or other breach."). Paragraph 27 of the agreement expressly prohibits Creighton from recovering these out-of-pocket expenses. The cost of remedying the system defects, on the other hand, might be recoverable as direct damages. *See T.O. Haas Tire Co., Inc. v. Futura Coatings, Inc.*, 507 N.W.2d 297, 304 (Neb.App. 1993) ("The measure set forth in [U.C.C.] § 2-714 is the equivalent of what is known as the diminished value rule. . . . [T]he cost of replacement or repair is an element to take into consideration in arriving at the value under some circumstances.").

Because it appears that Creighton may be entitled to some relief, despite the damages disclaimer, GE's Rule 12(b)(6) motion fails. *See Floyd v. Trice*, 490 F.2d 1154, 1158 (8th Cir. 1974) ("Even if a complaint asks for relief beyond that ordinarily permissible, the appropriate action is to tailor the relief rather than to dismiss the complaint for failure to state a claim upon which relief can be granted if in fact

10

cognizable claims are pleaded."); *Tauzin v. Saint Paul Mercury Indem. Co.*, 195 F.2d 223, 224 (5th Cir. 1952) ("If the facts alleged in a complaint reveal that a plaintiff is entitled to any kind of relief, it is sufficient and should not dismissed.").

### B. Exclusive Remedy

The performance warranty that is contained in paragraph 17.1 of the agreement reads as follows:

> IDX represents and warrants solely to Customer that, commencing upon the date IDX give[s] Installation Notice and continuing for as long as Customer is not [in] default of any payment obligations hereunder, the Software, while operating with the Third Party Software and on the hardware designated for such Software (the "System"), will substantially perform in accordance with its Documentation. IDX also represents and warrants solely to Customer that the System shall substantially perform in accordance with IDX's response to those technical and functional requirements described in Customer's RFP dated March 6, 2003, and as attached hereto, commencing upon the date IDX gives Installation Notice and continuing for ninety (90) days thereafter (the "Warranty Period"). IDX's obligation and liability, and Customer's sole and exclusive remedy, with respect to any breach of the foregoing warranties shall be for IDX to provide at no charge to Customer the services required to make the System operate as warranted. Customer shall provide detailed notice identifying the circumstances on which such failure is discovered within ten (10) days of discovering the breach, or within ten (10) days after the expiration of the Warranty, whichever is earlier.

(Filing 1-2, p. 10, ¶ 17.1.)

### 1. Applicability

The court is unable to find any other reference to "Installation Notice" in the portion of the agreement that is attached to the complaint, and Creighton does not

11

allege that such notice was ever given by IDX. The court assumes, however, that the limited 90-day warranty in paragraph 17.1 was not intended to go into effect prior to Creighton's acceptance of the system. The agreement states that "Acceptance shall be deemed to have occurred, and all payments associated with Acceptance shall be due, upon the expiration of (45) forty-five days after the First Live Use Date for such module or modules." (Filing 1-2, p. 10, ¶ 16.4.) The agreement also provided for testing, both before and after the first "live use" of the system, and required IDX to correct at no additional cost any software failures that were noticed by Creighton during the testing period. (Filing 1-2, p. 10, ¶ 16.3.) Creighton also retained the right to reject the software prior to acceptance. (Filing 1-2, p. 10, ¶ 16.4.)

In its complaint, Creighton identifies certain acts and omissions by IDX that allegedly occurred prior to the first live use of the system. It also identifies certain deficiencies in the system that allegedly were discovered after the system went live. Thus, Creighton alleges:

> 8. The System went "live" on September 12, 2005. Prior to "go live":
> a. IDX replaced the manager assigned to Creighton's project twice, which resulted in a lack of continuity in performing the tasks necessary to design and build the System in a proper manner.
> b. IDX assigned technical staff to Creighton's project who lacked familiarity with the version of the System that was being implemented at Creighton and who lacked sufficient knowledge to advise Creighton regarding best practices for the System;
> c. IDX encouraged Creighton to be selective in setting up pre-claim edits that would prevent claims from being submitted to payors without necessary data;
> d. IDX failed to build electronic claim forms in the manner specified by Creighton; and
> e. IDX, which was responsible under the Agreement for testing the System, failed to design tests to detect problems with many of the "back end" features of the System, including the e-commerce modules, claiming that such tests were not possible prior to "go live".

12

   9. After "go live" Creighton experienced problems with the System, including, but not limited to:
    a. deficiencies in the claim editing system delayed claims from being sent to payors;
    b. a large volume of claims were held up because of deficiencies in claim logic in the System;
    c. a significant delay in IDX's implementation of the electronic remittance process with Creighton's major payors; and
    d. a significant delay in building and implementing the collection agency interfaces and bad debt modules in the System.

(Filing 1, pp. 3-4, ¶¶ 8-9.)

  Creighton claims that these alleged failures constituted a breach of paragraph 17.5 of the agreement, in which "IDX represents and warrants that the services provided hereunder, including, without limitation, implementation, installation, training, maintenance and support services, will be performed in a professional and workmanlike manner and in accordance with industry standards." (Filing 1-2, p. 11, ¶ 17.5.) It is Creighton's position that this services warranty is "separate and distinct" from the performance warranty that is provided in paragraph 17.1. (Filing 28, p. 12.) GE, on the other hand, contends that paragraph 17.1 "applies and operates to limit Creighton's sole and exclusive remedy to the free provision of services necessary to make the System operate as warranted." (GE's Reply Brief (filing 29), p. 9.)

  The court accepts Creighton's interpretation of the agreement. That is, the "sole and exclusive remedy" language in paragraph 17.1 only applies "with respect to any breach of the foregoing warranties" that are stated in paragraph 17.1. The language has no application to the performance warranty that is subsequently stated in paragraph 17.5.[9]

---

[9] In paragraph 17.8, IDX also "represents and warrants that after First Live Use, the System shall perform in accordance with, and all services shall comply with the Service Level Agreement Attachment, attached hereto to this Agreement."

13

## *2. Enforceability*

Even so, it is unclear from the complaint that Creighton's breach of warranty claim is confined to paragraph 17.5. To the extent that Creighton is actually claiming that the system failed to conform in some particular respect to its documentation or to IDX's response to Creighton's request for proposals, then paragraph 17.1 applies. In this event, Creighton would be required to prove that it gave the required notice and that IDX or GE failed to cure the alleged deficiencies within a reasonable time.

> Under the Nebraska Uniform Commercial Code, it is clear that a seller of equipment can establish exclusive, limited written warranties and limitation of damages as a remedy for breach thereof. Neb. U.C.C. § 2-316 (Reissue 1980). "Repair and replacement" warranties and exclusion of consequential damages, which exclusion is not unconscionable, are allowed. Neb. U.C.C. § 2-719 (Reissue 1980). . . .
>
> However, § 2-719(2) also provides: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act." The Comment under § 2-719 further provides, in referring to subsection (2): "[W]here an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this article."
>
> The purpose of an exclusive remedy of "repair or replacement" from a buyer's viewpoint is to give him goods which conform to the contract within a reasonable time after a defect is discovered. Where the seller is given a reasonable chance to correct defects and the equipment still fails to function properly, the limited remedy of repair or replacement of defective parts fails of its essential purpose. In such an event, the buyer may then invoke any remedies available under the Uniform Commercial Code, including breach of warranties of merchantability or fitness for a particular purpose. The same would be

---

(Filing 1-2, p. 11, ¶ 17.8.) The "Service Level Agreement Attachment" is not attached to the complaint, and Creighton does not appear to be relying upon this warranty.

true regarding provable consequential damages, even though specifically excluded by the written warranty.

*John Deere*, 319 N.W.2d at 437-38.

### C. Notice of Personnel Problems

Paragraph 9.3 of the agreement, which concerns "assignment of resources," provides as follows:

> Customer shall have the right to pre-approve IDX's selection of key personnel who shall implement and manage Customer's account. In the event the IDX personnel are, or during the course of the performance of services become, in the reasonable opinion of Customer, incompetent, unprofessional, or unqualified to Customer then IDX shall promptly remove such personnel from providing services to Customer. IDX will make reasonable commercial efforts to maintain continuity of all personnel performing services for Customer. IDX will not remove or redeploy personnel performing such services without the prior written permission of Customer, such permission not to be unreasonably withheld, or unless such personnel have terminated employment, either voluntarily or involuntarily; such personnel reasonably request to be removed; or if such personnel becomes disabled or physically unable to perform such services. IDX may substitute personnel rendering services in a manner that does not unduly disrupt the performance of such services. In the event that IDX provides replacement personnel for any reason, IDX will not charge Customer for the number of hours required to train the replacement until such personnel are familiar with the particular project.

(Filing 1-2, p. 4, ¶ 9.3.)

GE argues that paragraph 9.3 provides the exclusive remedy for a breach of the services warranty (paragraph 17.5) that Creighton is relying upon, and also that it contains an implicit notice requirement. The argument goes something like this: Creighton alleges that "IDX and GE breached the Agreement by failing to provide

15

services in a professional and workmanlike manner and in accordance with industry standards." (Filing 1, p. 5, ¶ 14.) Paragraph 9.3 states that IDX employees who Creighton reasonably believed to be incompetent, unprofessional, or unqualified would be promptly removed from providing services. To obtain this limited remedy, it was necessary for Creighton to give notice of the alleged personnel problem. Because Creighton does not allege that it gave such notice, it has failed to state a claim upon which relief can be granted.[10]

There is nothing in the agreement to indicate that removal of employees was intended to be the sole remedy for IDX's or GE's failure to provide services in a professional manner. If the agreement is governed by the Uniform Commercial Code,[11] GE's argument clearly is without merit because § 2-719 specifies that "resort to a remedy as provided [in the agreement] is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." Neb.Rev.Stat. U.C.C. § 2-719(1)(b) (West, WESTLAW 2008). "Subsection (1)(b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly

---

[10] As will be discussed in the next section, Creighton has generally alleged that it performed all of its obligations under the agreement. Under federal pleading practice, this is a sufficient allegation that notice was given to the extent required.

[11] "The U.C.C. applies when the principal purpose of a transaction is the sale of goods, but does not apply when the contract is principally for services." *MBH, Inc. v. John Otte Oil & Propane, Inc.*, 727 N.W.2d 238, 246 (Neb.App. 2007). "The test for inclusion in or exclusion from the sales provisions [of the U.C.C.] is not whether the contracts are mixed but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved, or whether they are transactions of sale, with labor incidentally involved." *Id.* (quoting *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 363 N.W.2d 155, 160 (Neb. 1985)). This is a fact question that cannot be determined at this time, but it is possible that the agreement in this case was for the sale of goods. *See, e.g., Design Data Corp. v. Maryland Cas. Co.*, 503 N.W.2d 552, 556 (Neb. 1993) (computer software considered "goods").

16

expressed." *Id.*, comment 2. It is likewise a principle of Nebraska common law that "[a] contract will not be construed to limit the remedial rights of the parties unless that intention is clearly expressed." *Reichert v. Rubloff Hammond, L.L.C.*, 645 N.W.2d 519, 526 (Neb. 2002) (enforcing unambiguous provision in lease which plainly stated that it was the sole and exclusive remedy). The court therefore finds and concludes that paragraph 9.3 does not limit paragraph 17.5.

### D.  *Notice of Breach*

GE next claims that Creighton failed to give notice of breach as required by Neb.Rev.Stat. U.C.C. § 2-607(3)(a) (West, WESTLAW 2008) ("Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]"). A purchaser must plead that he gave timely notice of the breach. *Moore v. Puget Sound Plywood, Inc.*, 332 N.W.2d 212, 215 (Neb. 1983); *Timmerman v. Hertz*, 238 N.W.2d 220, 225 (Neb. 1976). "Whether the notice given is satisfactory and whether it is given within a reasonable time are generally questions of fact to be measured by all the circumstances of the case." *Fitl v. Strek*, 690 N.W.2d 605, 608 (Neb. 2005) (quoting *Cheyenne Mountain Bank v. Whetstone Corp.*, 787 P.2d 210, 213 (Colo.App. 1990)). "The notice requirement set forth in § 2-607(3)(a) serves three purposes. It provides the seller with an opportunity to correct any defect, to prepare for negotiation and litigation, and to protect itself against stale claims asserted after it is too late for the seller to investigate them." *Id.* Assuming that the U.C.C. applies, the court finds that notification of breach is sufficiently pleaded.

Examining the complaint, Creighton alleges that "[o]n multiple occasions after 'go live' Creighton notified IDX and, later, GE of the problems with the System and requested assistance in remedying the problems. IDX and GE failed to remedy the problems within a reasonable time after being notified by Creighton." (Filing 1, p. 4, ¶ 10.) It is plausible that such notification satisfied § 2-607(3)(a). In any event, it is generally alleged in the complaint that "Creighton has performed all of its

17

obligations under the Agreement." (Filing 1, p. 5, ¶ 15.) This allegation is all that is required under Federal Rule of Civil Procedure 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."). See *Thompson Farms, Inc. v. Corno Feed Products*, 366 N.E.2d 3, 17 (Ind.App. 1977) (§ 2-607(3)(a) notice is substantive condition precedent that must be alleged in complaint, but general allegation under state pleading rule comparable to Rule 9(c) is sufficient); *Winter v. Honeggers' & Co., Inc.*, 215 N.W.2d 316, 328 (Iowa 1974) (same).

### E. Statute of Limitations

Finally, GE argues that the negligent misrepresentation claim is time-barred.[12] The parties agree that the applicable statute of limitations is Neb.Rev.Stat. § 25-207, which provides: "The following actions can only be brought within four years: . . . (3) an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated; and (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud, . . . ." Neb.Rev.Stat. § 25-207 (West, WESTLAW 2008).

Both parties also agree that a discovery rule applies. This appears correct. Although "the Nebraska Supreme Court not yet specifically determined whether negligent misrepresentation is a cause of action that sounds in fraud for the purposes of [§ 25-207], . . . there are cases that strongly suggest that a negligent misrepresentation claim accrues when the falsity of a representation is discovered, as opposed to when the representation is made." *Nebraska Plastics, Inc. v. Holland Colors America, Inc.*, No. 4:01CV603, 2003 WL 22519410, *10-12 (D.Neb. Nov. 7,

---

[12] Even though the statute of limitations is an affirmative defense, *see* Federal Rule of Civil Procedure 8(c), the defense may properly be asserted through a Rule 12(b)(6) motion when it appears from the face of the complaint that the limitation period has run. See *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir.2004).

18

2003) (citing *NECO, Inc. v. Larry Price & Associates, Inc.*, 597 N.W.2d 602 (Neb. 1999), and *Agri Affiliates, Inc. v. Bones*, 660 N.W.2d 168 (Neb. 2003), and predicting that Nebraska Supreme Court would hold that "the statute of limitations for negligent misrepresentation claims begins to run upon discovery of the false statement, just as it does in fraudulent misrepresentation claims.").[13] *See also Ed Miller & Sons, Inc. v. Earl*, 502 N.W.2d 444, 452-53 (Neb. 1993) (stating in connection with § 25-207(4) that "[t]o recover in an action for fraud based on misrepresentation of a material fact, a plaintiff must prove that . . . the defendant knew that the represented fact was untrue, recklessly made the representation as a positive assertion without knowledge concerning the truth of the representation, or made the representation negligently as the result of a lack of reasonable care in ascertaining the fact represented or in the absence of skill and competence required by a particular business or profession[.]").

"Discovery, as applied to the statute of limitations, occurs when one knows of the existence of an injury or damage and not when he or she has a legal right to seek redress in court." *Andres v. McNeil Co., Inc.*, 707 N.W.2d 777, 786 (Neb. 2005) (quoting *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 507 N.W.2d 275, 281 (Neb.1993)). "Under the discovery principle, discovery occurs when there has been discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery." *Id.* "It is not necessary that the plaintiff have knowledge of the exact nature or source of the problem, but only knowledge that the problem existed." *Board of Regents v. Lueder Constr. Co.*, 433 N.W.2d 485, 491 (Neb. 1988).

---

[13] Even if negligent misrepresentation is not considered "fraud" for purposes of § 25-207, it is likely that the Nebraska Supreme Court would apply a discovery rule. The Court has held that in certain categories of negligence cases the statute of limitations begins to run on the date when the party holding the claim discovers or, in the exercise of reasonable diligence, should have discovered the existence of the injury. *See Alston v. Hormel Foods Corp.*, 730 N.W.2d 376, 381 (Neb. 2007); *Shlien v. Bd. of Regents*, 640 N.W.2d 643, 650 (Neb. 2002).

Creighton alleges that it "did not discover that the information provided by IDX was false until after the System went 'live' on September 12, 2005." (Filing 1, p. 6, ¶ 21.)  GE claims that Creighton should have made this discovery sooner because the alleged misrepresentations were made between November 2003 and February 2004 (*id.*, at ¶ 18), and Creighton has alleged that some problems were experienced before the system went live.  While there may be a fact issue as to when Creighton should have discovered the alleged misrepresentations, it is not apparent from the allegations of the complaint that the claim is time-barred.

### III. CONCLUSION

Although paragraph 27 of the parties' agreement will prevent Creighton from recovering most of the items of damages claimed, it may be entitled to some relief.  The limited remedy provided for the performance warranty stated in paragraph 17.1 does not apply to the services warranty stated in paragraph 17.5, nor does paragraph 9.3 provide the exclusive remedy for a breach of paragraph 17.5.  If Creighton was required to give notice of breach pursuant to U.C.C. § 2-607(3)(a), the complaint sufficiently states that such notice was given.  The negligent misrepresentation claim is not necessarily barred by the statute of limitations.

IT IS ORDERED that:

1. Plaintiff's motion to strike (filing 26) is denied.

2. Defendant's motion to dismiss (filing 21) is denied.

March 18, 2009.                    BY THE COURT:

                                   s/ *Richard G. Kopf*
                                   United States District Judge