IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CREIGHTON UNIVERSITY, | ) | 8:08CV460 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| GENERAL ELECTRIC COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

In a memorandum and order entered on March 18, 2009 (filing no. 31), the court determined, among other things, that: (1) the plaintiff, Creighton University, had not pleaded, and therefore could not argue, that a damages disclaimer in its contract with the defendant, General Electric Company,[1] is unconscionable; (2) this contract clause prevents Creighton from seeking to recover consequential damages for (a) loss of an anticipated $4.7 million increase in revenue, and (b) loss of income from uncollected billings in the amount of $2.4 million; and (3) the disclaimer also prevents Creighton from seeking to recover incidental damages for collection costs.

On May 29, 2009,[2] Creighton filed a motion for leave to file an amended complaint (1) to reclassify the $2.4 million in lost income as direct damages; (2) to allege in the alternative that the damages disclaimer is unconscionable; (3) as an alternative measure of damages, to seek to recover between $1.4 and $3 million for the difference between the value of the system as warranted and its actual value; (4) to allege that additional representations were made regarding system performance;

---

[1] The contract for a healthcare technology system was entered into with GE's predecessor-in-interest, IDX Information Systems Corporation.

[2] This was the filing deadline established by the court's progression order (filing no. 38).

(5) to add a new claim for breach of an oral agreement for reimbursement of a portion of the collection costs; and (6) to itemize out-of-pocket costs. GE opposes all aspects of the motion. I will grant Creighton leave to amend its complaint in some respects, and will direct it to file a modified version of the proposed amended complaint.[3]

### *(1) Loss of Income*

As discussed in my previous memorandum, the $2.4 million in net billings that Creighton allegedly was unable to collect because of programming deficiencies and delayed implementation of some parts of the system must be categorized as an item of consequential damages. "Consequential damages, as opposed to direct damages, do not arise directly according to the usual course of things from the breach itself; rather, they occur as a consequence of special circumstances known or reasonably supposed to have been contemplated by the parties when the contract was made." *Adams v. American Cyanamid Co.*, 498 N.W.2d 577, 588 (Neb.App. 1992) (farmers' claim against herbicide manufacturer for crop loss concerned consequential damages rather than direct damages). Paragraph 27 of the parties' agreement provides that GE shall not be liable "for any consequential, special, incidental, punitive or indirect damages (including without limitation loss of profit, revenue, business opportunity or business advantage), . . .." (Filing no. 1-2 (Exhibit A to complaint), p. 18.)

In an attempt to avoid this contractual provision, Creighton would allege that "[t]hese damages were naturally expected to follow from breach of the Agreement because the net billings would have been collected had the System been able to process claims in a timely manner so that claims could be submitted to payors within

---

[3] When this case was referred to mediation on June 16, 2009 (filing no. 52), the parties requested that a ruling be made on the motion to amend. The court's normal practice is to deny all pending motions without prejudice whenever a case is referred to mediation. *See* NECivR 7.6. An exception has been made in this case because the parties indicated that a ruling would assist them during mediation.

deadlines established by payors for the submission of claims. . . . The $2.4 million in uncollected claims are direct damages that Creighton suffered as a result of GE's breach of contract and negligent misrepresentations." (Filing no. 46-2 (proposed amended complaint), pp. 5-6, ¶¶ 11, 12.)[4] Labeling the $2.4 million in uncollected claims "direct damages" does not make them so. In fact, the allegation that the claims were uncollectible because they were not submitted within deadlines established by payors shows that the loss of income was attributable to special circumstances.

Creighton's proposed amendments regarding the alleged $2.4 million loss will not be permitted because they do not avoid the contract's exclusion of consequential damages. "Futility is a valid basis for denying leave to amend." *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009).

### *(2) Unconscionability*

"Pleading in the alternative in the event that the $2.4 million in uncollected claims are deemed to be consequential damages," Creighton next alleges that "the damages disclaimer in paragraph 27 of the Agreement is unconscionable because it would prevent Creighton from recovering damages directly resulting from the failure of the System to process claims in a timely manner so that claims could be submitted to payors within deadlines established by payors for the submission of claims." (Filing no. 46-2, p. 6, ¶ 12.) GE objects that no facts are alleged to establish that the damages disclaimer is procedurally or substantively unconscionable, and argues that the contract was negotiated by parties of equal bargaining power.

---

[4] Similar allegations are contained in count 1 (breach of contract claim) and count 2 (negligent misrepresentation claim) of the proposed amended complaint. (Filing no. 64-2, pp. 7, 10, ¶¶ 15, 17, 23.) The damages disclaimer broadly applies to "a claim or action of tort, contract, warranty, negligence, strict liability, breach of statutory duty, contribution, indemnity or any other legal theory or cause of action[.]" (Filing no. 1-2, p. 18.)

> The unconscionability of a contract provision presents a question of law. *See Melcher v. Boesch Motor Co.*, 188 Neb. 522, 198 N.W.2d 57 (1972). When considering whether an agreement is unconscionable, [the Nebraska Supreme Court] has stated that the term "unconscionable" means manifestly unfair or inequitable. *See Weber v. Weber*, 200 Neb. 659, 265 N.W.2d 436 (1978).
>
> A contract is not substantively unconscionable unless the terms are grossly unfair under the circumstances that existed when the parties entered into the contract. *Adams v. American Cyanamid Co.*, 1 Neb.App. 337, 498 N.W.2d 577 (1992). In a commercial setting, however, substantive unconscionability alone is usually insufficient to void a contract or clause. *See id.*, citing 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.28 (2d ed. 1990). A court must also consider whether the contract formation was procedurally unconscionable. *See id.*[5]

*Myers v. Nebraska Inv. Council*, 724 N.W.2d 776, 799 (Neb. 2006).

While Creighton adequately alleges that the damages disclaimer clause is substantively unconscionable insofar as it bars recovery of consequential damages for loss of income resulting from delays in claim processing,[6] there are no facts alleged in the proposed amended complaint which would support a finding of procedural unconscionability. In fact, Creighton alleges that it sought proposals from other vendors, and the contract itself recites that "the terms and conditions of this Agreement have been the subject of active and complete negotiations[.]" (Filing no. 46-2, p. 2, ¶ 5; filing no. 1-2, p. 19.) "An essential fact in determining unconscionability is the disparity in respective bargaining positions of parties to a

---

[5] "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract." *American Cyanamid Co.*, 498 N.W.2d at 589 (quoting *Schroeder v. Fageol Motors*, 544 P.2d 20, 23 (Wash. 1975)).

[6] I make no finding as to the truth of this allegation, however.

4

contract.*" Id.* (citing *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 571 N.W.2d 64 (Neb. 1997)).

"The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules." *Parkhill v. Minnesota Mut. Life Ins. Co.*, 286 F.3d 1051, 1057-58 (8th Cir. 2002). Because the proposed amended complaint does not allege any facts to show that there was a disparity in bargaining power or other procedural reason for not enforcing the damages disclaimer, the allegation of unconscionability will not be allowed. See *Cornelia I. Crowell GST Trust v. Possis Medical, Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) ("[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure[.]").

### *(3) General Damages*

"In the alternative, Creighton alleges that as a result of the breach of the Agreement by IDX and GE, Creighton has been damaged by the difference between the value of the System as warranted and the actual value of the System as implemented, which difference Creighton estimates to be between $1.4 million and $3 million." (Filing no. 46-2, pp. 8, ¶ 19.)[7] GE argues that this proposed amendment is also futile because paragraph 22 of the contract "disclaims all implied warranties, including implied warranties of title, merchantability and fitness for a particular purpose." (Filing no. 1-2, p. 13.) In reply, Creighton indicates that it is relying upon an express warranty contained in paragraph 17.5 of the contract, in which "IDX represents and warrants that the services provided hereunder, including, without

---

[7] As will be discussed herein, a slightly different allegation appears in count 2 of the proposed amended complaint.

limitation, implementation, installation, training, maintenance and support services, will be performed in a professional and workmanlike manner and in accordance with industry standards." (Filing no. 1-2, p. 11.)

I have previously held that this services warranty is separate and distinct from a performance warranty that is contained in paragraph 17.1 of the contract, and thus is not subject to the limitation in paragraph 17.1 that "Customer's sole and exclusive remedy . . . shall be for IDX to provide at no charge to Customer the services required to make the System operate as warranted." (Filing no. 1-2, p. 10.) General damages may be recovered for a breach of paragraph 17.5. I also previously held that to the extent Creighton is relying upon the performance warranty, it has sufficiently alleged that the limited remedy provided in paragraph 17.1 failed of its essential purpose.

Under the Uniform Commercial Code, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Neb.Rev.Stat. U.C.C. § 2-714(2) (West, WESTLAW through 2008 legislative session). "The measure set forth in § 2-714 is the equivalent of what is known as the diminished value rule." *T.O. Haas Tire Co., Inc. v. Futura Coatings, Inc.*, 507 N.W.2d 297, 304 (Neb.App. 1993). This has long been the measure of damages in Nebraska for breach of warranty claims. *See Oxygenator Co. v. Johnson*, 157 N.W. 339, 341 (Neb. 1916) ("In an action for damages for a breach of warranty or fraudulent representations as to the quality of personal property sold, where there is no rescission of the contract, the measure of damages is the difference between the value of the property as it actually was and what would have been its value had it been as represented at the time the representation or warranty was made.") (citing *Young v. Filley*, 26 N.W. 256 (Neb. 1886); *McConnell v. Lewis*, 78 N. W. 518 (Neb. 1899); *Sherrill v. Coad*, 138 N.W. 567 (Neb. 1912)). The damages allegation proposed by Creighton is consistent with Nebraska law.

6

In count 2 of the proposed amended complaint Creighton makes a slightly different allegation "that as a result of the breach of the Agreement [sic][8] by IDX and GE, Creighton has been damaged by the difference between the value of what Creighton parted with (the purchase price for the System) and the value of what Creighton received (the System as implemented), which difference Creighton estimates to be between $1.4 million and $1.8 million." (Filing no. 46-2, p. 10, ¶ 24.) This damages allegation is also consistent with Nebraska law since, as noted in my previous memorandum, expectancy damages cannot be recovered for negligent misrepresentation. As explained by the Nebraska Court of Appeals in *Burke v. Harman*, 574 N.W.2d 156, 176 (Neb.App. 1998):

> The commentary to § 552B of the Restatement adopts the out-of-pocket rule as the appropriate measure of damages for negligent misrepresentation and specifically excludes benefit of bargain damages. *Trytko v. Hubbell, Inc.*, 28 F.3d 715 (7th Cir.1994). . . . The *Trytko* court cites W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 10 (5th ed. 1984), to explain the crucial difference between these different measurements of damages as follows: "The out-of-pocket rule 'looks to the loss which the plaintiff has suffered in the transaction, and gives him the difference between the value of what he has parted with and the value of what he has received.'" 28 F.3d at 722. . . . In contrast, the benefit of the bargain rule "gives the plaintiff the benefit of what he was promised, and allows recovery of the difference between the actual value of what he has received and the value that it would have had if it had been as represented." Keeton et al., *supra*, § 10 at 768.

### *(4) Representations*

Concerning the negligent misrepresentation claim, Creighton alleges in the existing complaint that "[o]n or about December 31, 2003, in a Value on Investment Analysis, IDX represented that under a 'most likely case' scenario, Creighton would

---

[8] Creighton presumably intended to say "misrepresentations" rather than "breach of the Agreement".

7

realize cumulative cash flow of approximately $4.7 million if the System were implemented." (Filing no. 1 (complaint), p. 6, ¶ 18c.) A comparable statement is found in the general allegations of the complaint. (Filing no. 1, p.3, ¶ 6.) As noted at the outset of this memorandum, I previously ruled that the $4.7 million anticipated revenue increase is an item of consequential damages. In the proposed amended complaint, Creighton deletes the $4.7 million dollar reference and instead alleges that "the value of the System to Creighton under a 'most likely case' scenario would be approximately $15 million over the life of the proposed contract between IDX and Creighton." (Filing no. 46-2, p. 9, ¶ 21c.) A similar revision is made in the general allegations. (Filing no. 46-2, p. 3, ¶ 6.) Creighton also newly alleges in both sections of the proposed amended complaint that IDX represented that the system would (1) "reduce denied claims secondary to eligibility certification;" (2) "reduce denied claims secondary to referral and authorization;" (3) "reduce the cost associated with resubmission of denied claims;" (4) "reduce denied claims due to missing medical documentation;" (5) "reduce denied claims secondary to coding and/or missing information;" (6) "reduce the cost of electronic claims and statement mailing services per doctor per month;" and (7) "provide a cash benefit to Creighton secondary to A/R days reduction." (Filing no. 46-2, pp. 3, 9-10, ¶¶ 6c-i, 21c(2)-(8).)

"[T]he Nebraska Supreme Court has held that 'because negligent misrepresentation requires an intent to induce reliance, it is more appropriately viewed as a subspecies of fraud [rather than negligence].'" *Accurate Communications, LLC v. Startel Corp.*, No. 4:05CV3286, 2006 WL 277109, *5 (D.Neb. Feb.28, 2006) (quoting *Farr v. Designer Phosphate and Premix Int'l, Inc.*, 570 N.W.2d 320, 326 (Neb.1997). The heightened pleading standards of Federal Rule of Civil Procedure 9(b) therefore should be applied to Creighton's negligent misrepresentation claim. *See id.* (dismissing negligent misrepresentation claim for failure to plead with particularity). *See also The Weitz Company, LLC v. Alberici Constructors, Inc.,* No. 8:08CV199, 2009 WL 115980, *4 (D.Neb. Jan. 16, 2009) (same). In light of this enhanced pleading requirement, and considering that leave to amend is to be freely given when justice so requires, *see* Fed.R.Civ.P. 15(a)(2),

Creighton will be allowed to amend its complaint to regarding representations that allegedly were made by IDX.

### (5) *Oral Agreement*

Creighton proposes to add a third count in which it is alleged that "[i]n or around December 2006 Creighton and GE entered into an oral agreement whereby Creighton agreed to retain Mirrus [Systems] to assist with Creighton's collection efforts and GE agreed to reimburse Creighton for a portion of the fees paid to Mirrus for its collection services equal to 4.75% of the amount collected by Mirrus." (Filing no. 46-2, p. 11, ¶ 28.)  Creighton alleges that GE is obligated to pay $92,362.76.  GE argues that the alleged oral agreement (1) violates that statute of frauds and (2) is also unenforceable because there was no consideration.  Neither argument has merit.

Nebraska's statute of frauds provides in pertinent part as follows:  "In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: . . . (2) every special promise to answer for the debt, default, or misdoings of another person."  Neb.Rev.Stat. § 36-202 (West, WESTLAW, through 2008 legislative session).  Here, there is no allegation that GE promised to answer for Creighton's debt to Mirrus; rather, it is alleged that GE directly promised to reimburse Creighton for a portion of the amount it paid to Mirrus.  This alleged oral agreement is outside the statute of frauds.  *See Melson v. Turner*, 251 N.W. 172, 173 (Neb. 1933) ("Where the cause of action alleges a direct promise or a direct contract between plaintiff and defendant, a demurrer to the petition on the ground that the petition does not state a cause of action should be overruled, since such is not a promise to answer for the debt or default of another but is an original and not a collateral promise.") (syllabus).

"Generally, sufficient consideration for an agreement will be found if there is some benefit to one of the parties or a detriment to the other."  *Aon Consulting, Inc.*

9

*v. Midlands Financial Benefits, Inc.,* 748 N.W.2d 626, 638-39 (Neb. 2008). Here it is alleged that "GE suggested that Creighton retain Mirrus to help collect amounts owned to Creighton on claims processed by the System," and that Creighton became "obligated to and did pay Mirrus a contingent fee of 12.75% of the amount Mirrus collected." (Filing no. 46-2, p. 11, ¶¶ 27, 29.)[9] While it is not specifically alleged that the oral agreement was entered into before Creighton retained Mirrus, it appears from invoices attached to the proposed amended complaint that Mirrus's collection efforts did not commence until January 2007, and Creighton represents in its brief that it retained Mirrus based upon GE's promise to pay a portion of the fee. This would be sufficient consideration to support the agreement.

### *(6)  Out-of-Pocket Costs*

In the existing complaint, Creighton alleges that it "paid approximately $600,000 in out of pocket expenses in connection with efforts to remedy problems with the System and efforts to recover amounts owed on the significant backlog of claims that it experienced as a result of deficiencies in the System[.]" (Filing no. 1, p. 5, ¶ 11b.) I indicated in my previous memorandum that the cost of remedying system defects might be recoverable as direct damages, or at least provide evidence of the diminished value of the system, but that collection costs are incidental damages that cannot be recovered under paragraph 27 of the agreement.

In the proposed amended complaint, Creighton itemizes these out-of-pocket costs as including $200,000.00 for GE Services; $248,555.67 for Mirrus Services; $85,849.23 for Bearing Point Services; and $100,810.83 for FLOWCAST change orders. (Filing no. 46-2, pp. 8, 10, ¶¶ 18, 23.) Amounts paid to Mirrus are collection

---

[9] There is also a general allegation that "GE suggested that Creighton retain Mirrus Systems ("Mirrus") to help collect amounts owed to Creighton on claims processed by the System. GE agreed to reimburse Creighton for a portion of the fees paid to Mirrus for its collection services." (Filing no. 46-2, p. 5, ¶ 11.)

costs, but the purpose of the other expenditures is not known. Even though it may develop that none of these out-of-pocket costs are recoverable as damages, the itemization does not prejudice GE and will be allowed.

IT IS ORDERED that the plaintiff's motion for leave to file an amended complaint (filing no. 46-1) is granted in part and denied in part, as follows:
1. The plaintiff is denied leave to amend:
    a. to allege that it is entitled to recover as damages $2.4 million in uncollected claims; and
    b. to allege that the damages disclaimer contained in paragraph 27 of the contract is unconscionable.
2. In all other respects the motion is granted.
3. The plaintiff shall modify the proposed amended complaint (filing no. 46-2) to comply with this memorandum and order, and shall file the same on or before July 24, 2009.
4. The defendant shall respond to the filed amended complaint on or before August 17, 2009.[10]

July 14, 2009.                    BY THE COURT:

                                  s/ *Richard G. Kopf*
                                  United States District Judge

---

[10] The parties are reminded that their mediation is to be completed no later than August 14, 2009.

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.